JUSTICE TRIEWEILER
specially concurring.
The dissent touches all the politically-correct buttons. It pays homage to the Legislature and crows about judicial restraint. It accuses the majority of ignoring the law, basing its decision on emotions, and refusing to enforce the death penalty based on the members’ own views. The author of the dissent first weaves a procedural bar out of transparent whole cloth, and then wears the procedural bar she has woven as her own mantelet of judicial honor.
The dissent gets high marks for political pandering, but has little basis in law or in fact. The dissent is replete with factual inaccuracies and exaggerations which the author would apparently prefer to perpetuate, rather than recognize the record by which she contends we are bound.
The dissent suggests that this Court first arrived atits conclusions, and then sought to buttress them by its “review” of the facts. Anyone who participated in the extensive arguments, deliberations, and discussions conducted by this Court, and paid even minimal attention, knows better. But the statement makes a good sound bite.
*435 The dissent contends that the facts stated in this Court’s previous opinion were correct then and are correct now, apparently operating on the assumption that saying so makes it so. The author of the dissent has obviously not personally reviewed the record in this case.
The dissent accuses the majority of failing to affirmatively address the procedural bar to consideration of Montana’s Constitution. The omission is for good reason. Not even the State of Montana has contended that there is a procedural bar to consideration of the proportionality issue pursuant to Montana’s own Constitution. The issue was first raised sua sponte by the author of the dissent when her first written dissent was circulated. It is difficult to reconcile this type of activism with the same author’s refusal to address our constitution in State v. Zabawa (Mont. 1996), 928 P.2d 121, simply because the defendant did not assert that it provided greater protection than the federal constitution. So much for the judicial restraint that the dissent purports to idealize.
The dissent suggests that to ignore a procedural bar (incorrectly assuming that one exists) simply because this case involves the death penalty infers some kind of weak-kneed idealism based on emotion, rather than the law. In doing so, the author of the dissent, herself, ignores repeated declarations by the U.S. Supreme Court and its members to the effect that death penalty cases must be treated differently when the issue of a procedural bar is considered. As pointed out by Justice Stevens in his dissent to Smith v. Murray (1986), 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434:
(“The Court, as well as the separate opinions of a majority of the individual Justices, has recognized that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination”); Zant v. Stevens, 462 U.S. 862, 884, [103 S.Ct. 2733, 2746-47, 77 L.Ed.2d 235] (1983) (“[T]here is a qualitative difference between death and any other permissible form of punishment”); Rummel v. Estelle, 445 U.S. 263, 272, [100 S.Ct. 1133, 1138, 63 L.Ed.2d 382] (1980) (“This theme, the unique nature of the death penalty for purposes of Eighth Amendment analysis, has been repeated time and time again in our opinions. ... [A] sentence of death differs in kind from any sentence of imprisonment”); Lockett v. Ohio, 438 U.S. 586, 605, [98 S.Ct. 2954, 2965, 57 L.Ed.2d 973] (1978) (BURGER, C.J.) (“[T]he imposition of death by public authority is ... profoundly different from all other penalties”). Cf. Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1222 *436 (1986) (“[WJhen a capital defendant raises a nonfrivolous constitutional question, neither state nor federal courts should be free to refuse to decide it simply because it was not raised in accordance with state procedural requirements. Rather, federal law should expressly provide that in matters of procedural default, as in other matters, death is different”).

Indeed, the Court has recognized that even the threat of a death penalty may, in certain circumstances, exert a special pull in favor of the exercise of the federal court’s undisputed statutory power to entertain a habeas corpus writ on a claim that was procedurally defaulted.

Smith, 477 U.S. at 545-46 n. 11, 106 S.Ct. at 2673 n.11 (Stevens, J., dissenting) (emphasis added).
While the dissent is strong on political rhetoric, its legal analysis is faulty, its regard for the record is questionable, and its recognition of the judiciary as an independent branch of government responsible for enforcement of Montana’s Constitution is apparently less important than stoking the flames of public reaction to a grisly series of events, even if that means exaggerating this defendant’s involvement in those events.
It is always a challenge to decide brutal and sensationalized cases strictly on the law. That responsibility is only made more difficult by irresponsible and factually inaccurate and exaggerated statements like those made by the dissent.
If the author of the dissent had as much regard for the record as she claims, and limited her discussion to those legal issues over which there is arguably a basis for disagreement, the opinion and the dissent would be shortened considerably, and the public would be better served.